JOHNSON, Judge.
This plaintiff was employed as a salesclerk by defendant, Krown Drugs, Inc., in its drugstore in New Orleans. On December 6, 1965, she suffered disabling injuries in an accident in the drugstore. She was paid workmen’s compensation for 14 weeks and $800.60 in medical benefits. After she was discharged as able to work in March 1966, compensation payments were discontinued and on Ocotber 27, 1966, plaintiff filed this suit against her employer and its compensation insurance carrier to recover total disability payments and *556 penalties. After trial on November 22, 1967, there was judgment in the Civil District Court of Orleans Parish in favor of defendant, dismissing plaintiff’s suit. The plaintiff has appealed.
The only question at issue in this case before us is whether or not this plaintiff is disabled, and if so, is that disability the result of a posttraumatic neurosis condition triggered or caused by the physical injuries suffered in the drugstore accident on December 6, 1965. Stipulations were made in the trial court that narrowed the issues to this extent. Therefore, the question at issue here is one of fact. The trial court dismissed plaintiff’s suit. If that decision is to be reversed this court must find that the trial court’s decision is manifestly erroneous.
This plaintiff described herself as 40 years old, married 21 years, living with her husband and their four children. She had been employed, off and on, in several stores, as clerk and cashier over the past several years. Her first employment mentioned was for Kaufman Department Store. Later, while she was working at Camp LeRoy Johnson PX she stooped over to pick up something and pulled a muscle in her shoulder. For some four or five weeks she did not work. The next employment was at Halpern’s Fabric Shop. She said she was laid off in 1965, or 1964, she was not sure which, because of reduction in force as a result of bad business, but we rather imagine she quit work there when she was rather seriously injured in an automobile accident on January 2, 1965.
On December 6, 1965, plaintiff had the accident which is the subject of this suit while on duty at Krown Drugstore. She was asked to put some merchandise on a shelf which she could not reach. She stood on a stool made from an apple crate to enable her to reach the shelf. Her left foot went through the crate and she said she fell to the floor. Fellow employees helped her up but she stated that she could not stand because of extreme pain in her back and leg, so they laid her down again on the floor. . She was removed to Touro Hospital in an ambulance. Following that accident in the drugstore she was hospitalized for eleven days under the care of Dr. Russell C. Grunsten and Dr. H. R. Soboloff, orthopedic specialists, both of whom attended her from the date of the accident until she was discharged as cured in March, 1966. Examination of plaintiff revealed that she complained of soreness on pressure of low back, she experienced difficulty in back movement and leg raising tests. There was no change in reflexes but there was a decrease in sensory area of the right leg and foot. X-ray studies were within normal. Pelvic traction was applied and as the pain was- relieved it was removed after six days. She was instructed to wear a corset-type brace when she felt it was needed but to leave it off as much as possible. After she left the hospital on December 17, 1965, one of these doctors saw her every day in the physiotherapy department in Touro where she was administered proper exercises. Considerable improvement was noted and she stated her back generally felt comfortable, except when she did heavy housework. No neurological deficit was evident and the doctor could find no objective symptoms to support whatever pain she complained of in the repeated tests. By February 14, 1966, Dr. Grunsten said that it was determined that there was no nerve root irritation and no surgery indicated. On March 24, 1966, the doctor found all tests negative with normal range of motion and no objective symptoms to support her continued complaints. It was suggested that she see a gynecologist to determine if her complaints of soreness over the sacrum could be attributed to some problem with pelvic organs. She complained of discomfort and numbness in her entire lower right leg and foot. The doctor said her complaints of a stocking distribution of decreased sensation was of negative importance because there was no nerve pattern to explain it. On this point the doctor said he could not specifically restrict *557 plaintiff’s activities and he thought she had recovered from the accident of December 6, 1965. Payment of compensation was then discontinued.
Dr. J. Kenneth Saer, an orthopedic surgeon, examined the plaintiff on March 31, 1966. She complained of pain from pressure over the lumbosacral area but there was no pelvic tilt and no muscle spasm was evident. Flexion of the spine was slightly limited because of her complaints. Extension and lateral bending were within normal limits. The rhythm of lumbar motion seemed smooth and normal. Tendon reflexes were equal and there was no muscle weakness detectable. Based on her history and complaints this doctor thought it feasible that she did suffer some soft tissue and ligamentous injury in the accident but the doctor could find no sign of nerve root irritation and no disc protrusion. Dr. Saer had no recommendation for treatment.
Dr. Homer D. Kirgis, of the Department of Neurosurgery of Ochsner Clinic, examined plaintiff a few days prior to May 14, 1967. He stated the straight leg raising test produced complaints of pain at 90 degrees bilaterally. He found no muscle spasm and she appeared to have essentially normal range of mobility of the lower back, but she did complain of some pain from pressure. The doctor said from a neurological standpoint she appears to have recovered from her injuries and it was not possible for him to make any neurological diagnosis. He recommended that a urologic evaluation be made.
Dr. Cornelius E. ‘Gorman is a specialist in obstetrics and gynecology. Plaintiff went to this doctor on June 24, 1966, with reference to her complaints about injuries she received in the automobile accident of January 2, 1965. He saw her as a followup again on June 30, 1966. She was complaining of tightness in her chest which he attributed to her nerves. He could not make any finding to warrant any medication but gave her a tranquilizer. This doctor admitted her to the hospital for severe dyspnea, which he said means shortness of breath. She was discharged from the hospital later on the same day. The doctor said he thought the heavy breathing was self-induced and he could not find any cause for it. The plaintiff was brought to Dr. Gorman’s office on February 24, 1967, by the state police in a hysterical condition and he gave her a tranquilizer. In none of these visits in 1966 and 1967, did she make any complaints about back trouble. She complained only of pain in her chest. Nor did she tell this doctor anything about her accident at Krown Drugstore on December 6, 1965. Dr. Gorman said that he had seen plaintiff several times in January and February of 1953, and because of her complaints then of continued tension and weakness he gave her a sedative and prescribed a nerve tonic. He saw her again in December, 1953, and his records show the notation that she was suffering from hysteria for which he then gave her a strong sedative.
Dr. John F. Nabos specializes in surgery. He saw plaintiff in May, 1957. She was complaining then of pain in her left shoulder region extending into the arm and fingers which she said was aggravated by change in weather, particularly if it was raining. At that time plaintiff told this doctor that she had been in the hospital about four or five weeks before he saw her. She had X-rays of the shoulder and an EKG, both of which were negative for abnormal findings. She gave this doctor no history of any accident. He finally discharged her in August, 1957, and he did not see her again until April 1, 1961, when she came in complaining of pain in the upper back with radiation to the shoulder and ribs and along the midline of the abdomen. She had no deformities and her lungs were clear. She had a skin infection which he treated. At one time he was called to her home because of the increased pain in the upper back.
Dr. Nabos next saw plaintiff in June, 1962, when she complained of low back *558 ache and pain of the dorsal region with radiation into the chest wall and pain on extreme motion. She was admitted to the hospital on June 11, and discharged from the hospital two days later. X-rays and Laseigne tests were negative. She improved with bed rest. This doctor next saw plaintiff on March 31, 1964. She said that on that morning she stooped to pick up a pack of cigarettes for a customer when she had a sudden severe back pain. The only treatment prescribed was rest and medication. The doctor saw her nine times as a follow-up on this complaint until May 13, 1964, when she was discharged and the doctor had not seen her since.
Dr. Carl F. Culicchia is a neurosurgeon and he examined plaintiff on May 3, 1966, and again on May 26, 1966. She recited a history of the accident in the drugstore on December 6, 1965, when she said she immediately had back pain and continued to have it in the lower back and right hip, which was aggravated by coughing and sneezing but the pain did not go into her legs. The doctor’s examination showed no muscle spasm, no list of the spine, the range of the low back region showed flexion of approximately 75 degrees with normal lordotic curve that reverses normally when she touched her toes sitting on the table with legs stretched in front of her. Left and right bending and lumbar vertebra extension carried out fully with some complaint of pain over the right sacroiliac but no radiation from it. Leg raising tests were negative. Reflexes were normal. She showed a moderate limp on walking. The circumference of the left leg was slightly larger than the right but the doctor explained that this was due to the fact that she was left-handed for everything except writing. The doctor explained quite a number of other neurological tests from which he found “ * * * no evidence of nerve root or spinal cord compression” and “no evidence of injury or disease.” The plaintiff was referred to this doctor by Dr. Grunsten but he did not have any written report from Dr. Grunsten.
The testimony that was most revealing of the psychological characteristics of this plaintiff was that of Dr. Murphy St. Romain, a specialist in obstetrics and gynecology. He first saw plaintiff on December 22, 1953, when she came to him complaining of pain in her left breast radiating down her left arm. The doctor then made a complete system review, all tests, biopsy, cardiogram, X-rays, etc. His diagnosis was chronic cervicitis. From that time to September 27, 1965, this doctor saw and treated this plaintiff every few months and some times more often for many, many different problems, ailments and complaints, including pregnancies and births of children, several times for pain over left breast, left arm, the lower quadrants and right kidney area (several times for this), shortness of breath, nausea, stiff neck, pain in stomach, pain in eyes (referred to eye doctor), upset of her periods, excessive bleeding with heaviness in pelvis, pain in chest, tender ovary (several times), hysterectomy, various female complaints at different times, weakness, hemorrhoids, down in the dumps, crying spells, sore breasts, wanted to lose weight, increased tightness in chest radiating into back with weakness and crying, low backache radiating from the first sacral vertebra down both legs, nervousness (recommended psychiatrist but she refused), weakness and epigrastic pain, injuries in automobile accident of January 2, 1965, abdominal and back pain on March 13 and 14, 1965, when admitted to hospital and Dr. Signorelli was consulted for possible coronary problems. It must be noted that on many of these visits the doctor said he could find nothing wrong with her to substantiate her complaint. This doctor had no record of having seen her after the accident of December 6, 1965, and he had never heard of that accident until he received his summons to appear at the trial as a witness.
Dr. Blaise Salatich is a medical doctor specializing in orthopedic surgery. His *559 testimony goes to great lengths to explain that plaintiff is actually in such bad physical condition as the result of personal injuries suffered in the drugstore accident on December 6, 1965, that at the time of trial on November 22, 1967, he said it would be another 18 to 24 months before he could make a definite evaluation of her disability, which he said is based on her physical or mental condition or perhaps a combination of both. Counsel for plaintiff was asked the point-blank question as to whether plaintiff’s claim for compensation is based on a physical disability with actual pain and suffering and we understood counsel to answer that plaintiff has abandoned any contention that plaintiff was actually physically disabled at the time payment of compensation was discontinued and that the whole case and claim are now based on a disability resulting from a posttrau-matic neurosis conversion reaction. While Dr. Salatich in his testimony delved into the field of psychiatry, we give no weight or consideration to it because he does not qualify as an expert in that field. His opinion as to her physical condition is completely at variance with all of the several medical doctors. Even if counsel for plaintiff did contend that plaintiff is disabled because of actual physical hurt, the great preponderance of evidence by well qualified medical experts is that the lady is not disabled and has not been disabled since compensation payments were discontinued in March, 1966.
This brings us to the testimony of the psychiatrist, Dr. Clayton B. Edisen, the only expert upon whom counsel for plaintiff relies to prove plaintiff’s disability because of posttraumatic neurosis conversion reaction. Dr. Edisen saw plaintiff on two occasions only — July 6 and November 20, 1967. The trial of this case started on November 22, 1967. Of course, at that date the doctor’s opinion, evaluation, findings and conclusions had to be based on the history of plaintiff’s life and injuries suffered in the drugstore accident given to the doctor by the plaintiff. He said plaintiff mentioned the automobile accident which happened on January 2, 1965, but he did not go into that because he was not “seeing her about that”. He made it clear that her present condition is entirely referrable to her back, hip and leg areas. He thinks she actually suffered physical pain but even if she only believes she has pain the disability would be the same. The doctor knew that she was sent to him for evaluation in connection with this litigation (the plaintiff settled by way of compromise her suit for damages for the automobile accident of January 2, 1965, which settlement was effected after this present suit was filed). His testimony is lengthy and very much involved and it would be impossible and serve no useful purpose to endeavor to epitomize it. As the cross-examination of Dr. Edisen developed with regard to evidence of plaintiff’s medical history and anxieties, explained by her over many years, this doctor admitted that he did not know anything about many things referred to which he said may have made a difference in his view and conclusions if he had known that some of these things were so involved. He further admitted, after hearing about the many complaints and conditions referred to in the testimony of other doctors in this case, that there would be no way of knowing when her conversion reaction began. We think that is the crux of the whole case. The doctor listed a number of anxieties which could have precipitated conversion reaction, many of which conditions were actually experienced by this plaintiff on various occasions before this accident of December 6, 1965. All these things lead us to conclude that the testimony falls far short of that convincing preponderance that could possibly justify or warrant a reversal of the judgment of the trial court. Young v. Insurance Company of North America, 213 So.2d 774; Beaugez v. Liberty Mutual Insurance Co., La.App., 173 So.2d 869; Russell v. Bemis Brothers Bag Company, 169 *560 So.2d 261; Elliott v. Insurance Company of North America, La.App., 159 So.2d 313.
For these reasons, the judgment of the Civil District Court for the Parish of Orleans is affirmed with costs to be paid by plaintiff-appellant.
Affirmed